IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AMANDIA WILLIAMS,

        Plaintiff,

vs.                                                                                                          No. 2:19-CV-00905-KRS

ANDREW M. SAUL, Commissioner of
Social Security Administration,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court upon Plaintiff's Motion to Reverse the Administrative Law Judge (ALJ) Unfavorable Decision . . . or Alternatively to Remand the Case Back to the Administrative Law Judge (Doc. 18) and supporting brief (Doc. 19), both dated March 2, 2020, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Plaintiff is not entitled to benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1381-83f. The Commissioner responded to Plaintiff's motion on June 1, 2020 (Doc. 24), and Plaintiff filed a reply brief on June 12, 2020 (Doc. 25). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the Administrative Law Judge ("ALJ") erred in her decision and will therefore GRANT Plaintiff's motion and remand this case back to the SSA for proceedings consistent with this opinion.

**I. PROCEDURAL POSTURE**

Plaintiff protectively filed an initial application for supplemental security income on November 29, 2012 (*see* Administrative Record ("AR") at 153) and protectively filed an initial

application for disability benefits on December 3, 2012 (*see id.* at 16, 152). Plaintiff alleged that she had become disabled on June 15, 2010, due to post-traumatic stress disorder, fibromyalgia, chronic depression, anxiety disorder, degenerative disc disease, carpal tunnel, high blood pressure, and diabetes. (*Id.* at 314, 318). Her application was denied at the initial level on February 1, 2013 (*id.* at 125-54, 192-203), and at the reconsideration level on August 14, 2013 (*id.* at 155-90, 212-21). Plaintiff requested a hearing (*see id.* at 222-26), which ALJ Myriam C. Fernandez Rice conducted on April 29, 2015 (see *id.* at 36-64).

On May 29, 2015, ALJ Fernandez Rice issued her decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (*Id.* at 16-29). Plaintiff requested that the Appeals Council review ALJ Fernandez Rice's decision (*id.* at 11-12), but the request was denied (*id.* at 1-7). Plaintiff subsequently sought judicial review, and on February 28, 2017, the Honorable Gregory B. Wormuth, United States Magistrate Judge, granted the Commissioner's unopposed motion to remand the case to the SSA for further proceedings. (*See id.* at 1804-06).[1]

On remand, the Appeals Council held in a July 28, 2017 order that the Commissioner failed to consider all of the available evidence during the original proceedings, including certain post-hearing treatment records. (*See id.* at 1800-02). The Appeals Council then remanded Plaintiff's case to the ALJ, directing her to obtain additional evidence concerning Plaintiff's impairments, to give further consideration to Plaintiff's RFC with appropriate rationale and references to the record, and to obtain particular evidence from a vocational expert concerning the effect of Plaintiff's limitations on her occupational base. (*See id.*); *see also* 20 C.F.R. §§ 404.977, .983 (discussing SSA procedures on remand from district court).

---

[1] *See also* Order (ECF 20), *Williams v. Berryhill*, 2:16-cv-1169-GBW (D.N.M. Feb. 28, 2017).

Plaintiff again requested a hearing (*see* AR at 1874-88), which ALJ Lillian Richter (hereinafter "the ALJ") held on February 8, 2018 (*see id.* at 1737-98). Plaintiff was represented by counsel and testified at the hearing, as did vocational expert Tristan King. (*See id.*). On August 16, 2018, the ALJ issued her decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (*See id.* at 1710-27).

Plaintiff filed exceptions with the Appeals Council (*id.* at 1702-06), but the Appeals Council did not assume jurisdiction (*id.* at 1698-1700). Consequently, the ALJ's decision became the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.984(b)(2). On September 27, 2019, Plaintiff timely filed this action seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high,"

evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

### B.  Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of her impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the

Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that she is able to do despite her limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, she is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III. THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process. (AR at 1711-12). She first determined that Plaintiff had not engaged in substantial gainful activity since his onset date. (*Id.* at 1712). She then found that Plaintiff suffered from the following severe impairments: degenerative disc disease, obesity, displaced lumbar and thoracic discs, knee osteoarthritis, migraine, post-traumatic stress disorder (PTSD), depression, carpal tunnel syndrome, chronic pain syndrome, degenerative joint disease of the right knee, diabetes mellitus, bipolar I disorder with psychotic features, social phobia, attention-deficit hyperactivity disorder ("ADHD"), and fibromyalgia. (*See id.* at 1713). The ALJ also found at step two that Plaintiff suffered from hypertension, gastroenteritis, and cannabis abuse, but she held that these impairments were not severe. (*See id.*).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*See id.* at 1713-16). In so holding, the ALJ found among other things that Plaintiff was moderately limited in each of four broad areas of mental functioning, meaning that

5

she did not satisfy the "paragraph B" criteria of sections 12.04, 12.06, 12.11, and 12.15 of Appendix 1. (*See id.* at 1714-16).

Proceeding to the next step, the ALJ reviewed the evidence of record, including Plaintiff's subjective symptom evidence and certain opinions and other evidence provided by medical and non-medical sources. (*See id.* at 1716-25). Based on her review of this record evidence, the ALJ concluded that Plaintiff possessed an RFC for a limited range of light work with certain restrictions. (*See id.* at 1716). At step five, the ALJ found that while Plaintiff could not perform any past relevant work, Plaintiff could perform other jobs existing in significant numbers in the national economy if she were restricted to the aforementioned RFC. (*See id.* at 1725-27). As such, the ALJ concluded that Plaintiff's work was not precluded by her RFC and that she was not disabled. (*See id.* at 1726-27).

## IV. DISCUSSION

Plaintiff appears to raise at least six arguments, taking issue with certain findings by the ALJ at steps two and three of the sequential evaluation process, the ALJ's evaluation of her subjective symptom evidence, the ALJ's evaluation of medical opinions provided by Plaintiff's treating psychiatrist, the ALJ's findings at step five, and the Appeals Council's handling of the exceptions she filed. (*See* Doc. 19 at 5-18). The Court holds that while certain of these arguments have been waived or are otherwise without merit, remand is required because the ALJ erred in her evaluation of certain treating psychiatrist opinions; as such, the Court does not address all of Plaintiff's contentions. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### A. Plaintiff's Undeveloped Arguments Concerning Steps Two and Three

For her first point of argument, Plaintiff simply recounts the severe impairments that the ALJ found at step two of the sequential evaluation process and certain evidence supporting the

6

conclusion that these impairments were severe. (*See* Doc. 19 at 5-9). Without citing any legal authority, Plaintiff contends that fifteen severe impairments amount to "a highly inordinate number[] and should've been enough to warrant a conclusion of disability." (*See id.* at 5). The Commissioner responds—correctly—that a claimant's raw count of severe impairments at step two is not dispositive as to the question of her disability or non-disability. (*See* Doc. 24 at 9) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007)). Plaintiff appears to concede this point in her reply brief, though she stresses that "even one (1) severe impairment significantly limits an individual's ability to perform basic work activities. Can we therefore envision an individual that has fifteen (15) impairments?" (*See* Doc. 25 at 1-2).

For her second point of argument, Plaintiff cites multiple exhibits to contend that she "met the requirements for being within Listing 12.04 Affective Disorder" and that the ALJ should have found as much at step three. (*See* Doc. 19 at 9-13). In his response brief, the Commissioner observes that Plaintiff "provides no explanation of how the ALJ erred, simply reciting a synopsis of selections from the transcript" (*see* Doc. 24 at 9-10), a point that Plaintiff does not dispute in her reply brief (*cf.* Doc. 25).

Plaintiff's arguments fail for multiple reasons. First, because she cites no authorities in support of these arguments, Plaintiff has failed to abide by this Court's local rules. *See* D.N.M.LR-Civ. 7.3(a) (requiring movants to "cite authority in support of the legal positions advanced"). Second, by failing to sufficiently develop these arguments, Plaintiff has effectively waived them. *See, e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)); *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider such issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation."); *see also,*

*e.g.*, *Baca v. Berryhill*, 1:16-cv-983-KRS, 2017 WL 5714022, at *3 (D.N.M. Nov. 28, 2017) (citing, *e.g.*, *Keyes-Zachary*, 695 F.3d at 1161) (declining to consider "unanalyzed assertions" and "undeveloped and largely unsupported" arguments not "sufficiently developed or supported to require review").

More fundamentally, Plaintiff misapprehends the Court's role in this action. Although Plaintiff asserts that she does not raise these arguments in an effort to have the Court reweigh the evidence (*see* Doc. 25 at 3), she does not point to any legal errors committed by the ALJ on these points, and she does not show that the ALJ's failure to find her disabled at step two or the ALJ's failure to find that she met the requirements of section 12.04 of the Listings were unsupported by substantial evidence. Rather, Plaintiff argues that the Court should find that the ALJ erred because the weight of the evidence supported *her own* arguments on these points (*see* Doc. 19 at 5-13)—the very essence of inviting the Court to reweigh the evidence.

This Court does not conduct a *de novo* review of the Commissioner's decisions as to a claimant's disability application. Rather, as the Tenth Circuit has long recognized,

> [t]he scope of review in this court is, of course, limited. [The Court's] inquiry is whether . . . the decision of the [Commissioner] is supported by substantial evidence. . . . [A] trial de novo in which [the Court's] findings would be substituted for those of the [Commissioner] supported by substantial evidence is impermissible.

*Haley v. Celebrezze*, 351 F.2d 516, 517 (10th Cir. 1965); *see also* 42 U.S.C. § 405(g). Put another way, the Court "cannot grant a trial de novo" on the findings or decision of the Commissioner concerning Plaintiff's application for benefits. *See Young v. Astrue*, 219 F. App'x 840, 842 (10th Cir. 2007) (citation omitted). Nor may the Court "displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Because Plaintiff does not point to any legal standards that the ALJ failed to correctly

apply with respect to her step-two findings and her findings concerning section 12.04, and because Plaintiff provides no developed argumentation showing that the ALJ's decision was unsupported by substantial evidence, the Court denies Plaintiff's request to remand on these bases.

### B. Plaintiff's Undeveloped Argument Regarding Subjective Symptom Evidence

Elsewhere, Plaintiff contends that the ALJ erred in finding that her subjective symptom evidence was "not entirely consistent with the medical evidence and other evidence in the record." (*See* Doc. 19 at 5) (quoting AR at 1717). However, the entirety of Plaintiff's argument on this point is as follows:

> Contrary to the ALJ finding, . . . the claimant's statement concerning the intensity, persistence and limiting effects of her symptoms are entirely consistent with the medical evidence and other evidence as described in arguments 1 and 2 above [concerning the number of severe impairments and section 12.04 of the Listings].

(*Id.* at 13). Again, though, Plaintiff does not elaborate on her argument further and does not cite any legal authority in support of her position. Accordingly, Plaintiff's argument as to the ALJ's treatment of her subjective symptom evidence is waived, and remand on this basis is not warranted. *See Keyes-Zachary*, 695 F.3d at 1161; *Wooten*, 377 F.3d at 1145 (10th Cir. 2004).

### C. Plaintiff's Undeveloped Arguments Regarding the Appeals Council's Decision

In a similar vein, Plaintiff argues that the Appeals Council failed to adequately "address the numerous issues raised by [her]" when she sought review of the ALJ's decision. (*See* Doc. 19 at 17-18). Once again, Plaintiff cites no legal authority in support of this position and does not otherwise develop her argument (*see id.*), which are sufficient reasons to deny Plaintiff's motion to remand on this basis.

Moreover, as the Commissioner points out, the Appeals Council was not required to issue a lengthy opinion resolving Plaintiff's arguments. (*See* Doc. 24 at 10) (citing *Vallejo v. Berryhill*,

849 F.3d 951, 955-56 (10th Cir. 2017)). Rather, the Appeals Council was merely required to "issue a notice to [Plaintiff] addressing [her] exceptions and explaining why no change in the decision of the [ALJ] is warranted. *See* 20 C.F.R. § 404.984(b)(2) (explaining appeals process following judicial remand and further consideration by ALJ). Plaintiff does not explain why the Appeals Council's notice (AR 1698-1700) purportedly fails to meet these requirements, and upon its own review, the Court sees no support for such an argument. Therefore, Plaintiff's request to remand on this basis is also due to be denied.

### D.  Treating Psychiatrist Opinions

In her decision, the ALJ reviewed materials from Plaintiff's treating psychiatrist, Mark Beale, M.D., including letters by him dated November 23, 2015 and August 10, 2017. (*See* AR at 1721-22). After discussing these letters, the ALJ accorded little weight to the medical opinions included therein. (*See id.*). Plaintiff argues that the ALJ erred in her weighting of these opinions "[g]iven the fact that Dr. Beale has the most information pertaining to the claimant's treatment." (*See* Doc. 19 at 13-16). The Commissioner argues in response that Plaintiff's argument is underdeveloped, that the ALJ's weighting followed the applicable legal standards, and that the ALJ was permitted to disregard certain of Dr. Beale's opinions. (*See* Doc. 24 at 10, 13-14).

SSA regulations provide that an ALJ should "[g]enerally, . . . give more weight to opinions from [claimant's] treating sources." *See Watkins*, 350 F.3d at 1300 (citing 20 C.F.R. § 404.1527(c)(2)).[2] Indeed, as Plaintiff notes, usually "[t]he treating physician's opinion is given particular weight because of his 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations,

---

[2] Plaintiff's claims were filed before March 27, 2017, meaning that the new regulations concerning the handling of medical opinion evidence found at 20 C.F.R. § 404.1520c and 20 C.F.R. § 404.920c do not apply to this proceeding. Although Plaintiff applied for benefits under both Title II and Title XVI, the Court hereinafter cites only to the regulations promulgated under Title II and does not also cite to the parallel regulations under Title XVI.

such as consultative examinations or brief hospitalizations.'" *See Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(c)(2)).

However, the general rule concerning treating physicians gives way under certain circumstances. If the ALJ finds that the treating physician's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is not "consistent with other substantial evidence in the record," then the ALJ may choose to afford less than controlling weight to the physician's opinion. *See Watkins*, 350 F.3d at 1300 (citing SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)[3]). In such cases, the ALJ must consider certain factors in determining what weight to assign to the opinion, including

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*See id.* (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

Although the ALJ need not expressly discuss all of these factors, he must fully consider them and give "good reasons" for his weighting of the treating physician's opinions. *See id.*; *see also Oldham*, 509 F.3d at 1258 (citing SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006)) (recognizing that "[n]ot every factor for weighing opinion evidence will apply in every case"). In particular, "[t]he record must demonstrate that the ALJ considered all of the evidence," and he must discuss not just the evidence supporting his decision, but also "the uncontroverted evidence he chooses not to rely upon" and "significantly probative evidence he rejects." *See Clifton v.*

---

[3] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

*Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Further, the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted).

Here, although the ALJ accorded little weight to the medical opinions expressed in both of Dr. Beale's letters, she asserted different grounds for her weighting as to each letter. As such, the Court addresses these opinions separately.

i. Dr. Beale's November 23, 2015 Opinions

In his first letter, Dr. Beale stated in relevant part as follows:

> [Plaintiff] suffers from Akath[i]sia & Bipolar Syndome. She is anxious all the time, she cannot sleep or work because of concentration issues and the inability to pay attention as well as having difficulty with completing tasks. We will continue with supportive therapy medications. She cannot work at this time and needs assistance.

(*Id.* at 1965).

The ALJ accorded the medical opinions expressed here little weight, finding that they were "not consistent with [Dr. Beale's] own treatment notes . . . showing generally normal mental status examinations and GAF ratings usually in the 60s." (AR at 1721).[4] However, it does not appear that the ALJ disregarded Dr. Beale's finding that Plaintiff suffers from akathisia and bipolar disorder; indeed, the ALJ found that Plaintiff's bipolar disorder was a severe impairment.

---

[4] The Global Assessment of Functioning, or "GAF," is "a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary*, 695 F.3d at 1162 & n.1 (citing AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32, 34 (Text Revision 4th ed.2000)). A GAF of 60 generally denotes moderate symptoms, while a GAF from 61 to 70 indicates that the patient possesses "[s]ome mild symptoms . . . but [is] generally functioning pretty well." *See id.* at 1162 n.1.
Although an ALJ may consider GAF scores when assessing a claimant's RFC, the SSA has long recognized that such scores "do[] not have a direct correlation to the severity requirements in [the agency's] mental disorders listings." *See* 65 Fed. Reg. 50746, 50764-65 (2000). Moreover, because GAF scores evaluate *overall* functioning (not just occupational functioning) at one point in time, such scores are of limited utility. *See, e.g.*, *McGehee v. Saul*, 18-cv-1164 KK, 2019 WL 6219507, at *6 (D.N.M. Nov. 21, 2019) (citations omitted); *see also Roper v. Saul*, 2019 WL 4394049, at *11 n.34 (D.N.M. Sept. 13, 2019) (noting ALJ's statement that GAF scores are a "snapshot" of overall functioning, that "[t]he Commissioner has declined to endorse the GAF scale for 'use in Social Security and SSI disability programs,'" and that such scores "are not intended to assess disability").

(*See id.* at 1713). Rather, the ALJ appears to have given little weight to Dr. Beale's conclusions concerning the nature and severity of her symptoms. (*See id.* at 1721). Plaintiff disputes this outcome, acknowledging that "there were certain times that [she] has better days than others" but insisting that "the vast majority of the records supported Dr. Beale's ultimate conclusions." (*See* Doc. 25 at 2-3).

In support of her finding that Dr. Beale's notes described "generally normal" mental status examinations and "GAF ratings usually in the 60s," the ALJ specifically cited Dr. Beale's treatment notes from June 2015, April 2016, December 2016, and February 2017. (*See* AR at 1721). It is true that these and other notes showed that Dr. Beale routinely listed Plaintiff's GAF score as being in the 60s. (*See id.* at 1979, 1995, 1997-2000, 2004-05) (GAF of 60 in June 2015; April, June, July, August, and October 2016; and January 2017); (*id.* at 2003) (GAF of 64 in December 2016); (*id.* at 2006) (GAF of 68 in February 2017). Additionally, Plaintiff's initial psychiatric evaluation in June 2015 did reflect a "generally normal" mental status examination with no significant negative findings. (*See id.* at 1979). And because the ALJ correctly notes that Dr. Beale's December 2016 notes reflected thought processes "within normal limits" (*see id.* at 1721, 1984), the fact that Dr. Beale also found Plaintiff to be exhibiting pressured speech and limited judgment and insight during that visit (*see id.*) would not necessarily represent a significant deviation from an otherwise "generally normal" record if such findings were isolated in nature.

The problem, though, is that these select findings from Dr. Beale's treatment notes cannot be considered in isolation. *See, e.g.*, *Carpenter*, 537 F.3d at 1265 (ALJ may not "pick and choose" among portions of medical evidence); *Clifton*, 79 F.3d at 1010 (ALJ must consider all evidence). Here, far from reflecting a history of "generally normal mental status examinations"

(*see* AR at 1721), Dr. Beale's treatment notes for Plaintiff include a substantial number of entries that suggest a more serious longitudinal record—entries that, because of their probative nature, the ALJ should have addressed in her decision.

In a September 2015 mental status examination, Plaintiff appeared disheveled, possessed a dysphoric mood and irritated affect, demonstrated limited judgment and insight, and complained of losing focus and poor sleep patterns. (*Id.* at 1988). The following month, although somewhat improved overall, Plaintiff was disoriented as to place, person, and situation with dysphoric mood, inconsistent affect, and pressured speech. (*Id.* at 1989). In December 2015, Dr. Beale described Plaintiff as having only fair insight and judgment and an unstable mood. (*See id.* at 1994). Two months later, Plaintiff was disoriented as to time, place, person, and situation, and she complained of manic episodes and erratic sleep. (*See id.* at 1992). She was assessed as unstable in March 2016 with a GAF score of 50, indicative of "serious" symptoms,[5] and she remained disoriented on all four dimensions in March through May 2016. (*Id.* at 1993, 1995-96).

Although her condition was somewhat improved as of June 2016, Plaintiff remained disoriented as to person, place, and situation during that visit, and she again exhibited pressured speech and limited judgment and insight. (*See id.* at 1997). While her speech, judgment, and insight had improved the following month, she remained disoriented on all four dimensions (*see id.* at 1998), which continued into August 2016 (*see id.* at 1999). In October 2016, Plaintiff exhibited concrete thought processes but somatic delusions, and she remained fully disoriented through the following month. (*See id.* at 2000-02). In December 2016, in addition to exhibiting limited judgment and insight and pressured speech, Plaintiff continued to describe problems sleeping, and Dr. Beale noted the presence of "AD[]HD factors." (*See id.* at 2003).

---

[5] *See Keyes-Zachary*, 695 F.3d at 1161 n.2 (citing AM. PSYCHIATRIC ASS'N at 34).

As of January 2017, Dr. Beale found that Plaintiff remained disoriented on all four dimensions and that she exhibited somatic delusions, pressured speech, and limited judgment and insight. (*See id.* at 2004). He noted at that time that Plaintiff had recently been hospitalized with an anxiety attack, and he described her as not feeling like herself. (*See id.*). Later that month, Dr. Beale again found Plaintiff to be disoriented on all four dimensions, and he found her to have limited judgment, poor insight, disorganized thought processes while also recording additional sleeping problems. (*See id.* at 2005). In the final progress note on record, Dr. Beale again described Plaintiff as fully disoriented, and while he noted only fair judgment and insight and no problems with speech or thought processes, he found her mood to be dysphoric. (*See id.* at 2006).

An ALJ must provide "appropriate explanations for accepting or rejecting" medical opinions. *See* SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). Moreover, an ALJ may not "mischaracterize or downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)). Here, although the ALJ described Dr. Beale's notes as "showing generally normal mental status examinations" (AR at 1721), the record in fact reflects that Plaintiff regularly suffered from significant disorientation, exhibited limited judgment and insight, complained of (and received treatment for) sleep problems and serious anxiety, and struggled with focus and thought processes. (*See id.* at 1988-2006). More importantly, Dr. Beale's findings in these notes are often congruent with the opinions reflected in his November 2015 letter concerning Plaintiff's anxiety, sleep problems, and concentration issues. (*See id.* at 1965). Despite this apparent congruity, the ALJ altogether failed to address these findings in her decision. *See Clifton*, 79 F.3d at 1010 (holding that ALJ must discuss "the uncontroverted evidence [s]he chooses not to rely upon" and "significantly probative evidence [s]he rejects").

By instead citing only to treatment records reflecting relatively unproblematic mental status examinations and favorable GAF scores (*see* AR at 1721), the ALJ engaged in impermissible picking and choosing among Dr. Beale's treatment records. *See Carpenter*, 537 F.3d at 1265.

The Commissioner, arguing that Dr. Beale only opined "that Plaintiff was unable to work," takes the position that the ALJ could not have erred in her evaluation of the November 2015 letter because Dr. Beale did not provide "medical opinions that were entitled to any specific weight." (*See* Doc. 24 at 13-14). Certainly the ultimate issue of a claimant's ability or inability to work "is an issue reserved to the Commissioner." *See Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008); *see also* 20 C.F.R. § 404.1527(d)(2). However, the ALJ recognized in her decision that Dr. Beale was opining not only on Plaintiff's work capacity, but also on the nature and severity of Plaintiff's symptoms. (*See* AR at 1721) (discussing Dr. Beale's findings as to Plaintiff's alleged anxiety, sleep problems, concentration and focus issues, inability to complete tasks, and diagnoses). Such opinions amount to "medical opinions" under SSA regulations. *See* 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). And as noted, despite the ALJ's selective citation to Dr. Beale's treatment notes, these opinions appear to be *consistent* with a substantial portion of Plaintiff's mental status examination results reflected in those notes. By failing to address these consistent findings when according weight to Dr. Beale's medical opinions, and by instead citing only to those treatment records that supported a finding of nondisability, the ALJ committed legal error. *See, e.g.*, *Carpenter*, 537 F.3d at 1265; *Clifton*, 79 F.3d at 1010.

Because the ALJ failed to correctly apply legal standards when evaluating the medical opinions expressed by Dr. Beale in his November 2015 letter, Plaintiff's motion is due to be granted. On remand, the ALJ will properly evaluate and weigh these opinions pursuant to governing legal principles. If the ALJ again concludes on remand that Dr. Beale's November 2015 medical opinions should be accorded less than controlling weight, she will provide an adequate explanation for that decision and will address the "significantly probative" evidence that may be construed as supporting his opinions. *See Clifton*, 79 F.3d at 1010.

## ii. Dr. Beale's August 10, 2017 Opinions

The body of Dr. Beale's August 10, 2017 letter reads as follows:

> Amandia Williams suffers from a combination of disabling emotional problems. One is from PTSD, the second one is depression and ADHD. She is barely able to keep up with her ADL [activities of daily living]. Needs medicine and supervision.

(AR at 1974). As with Dr. Beale's November 2015 letter, the ALJ accounted for Dr. Beale's diagnoses of PTSD, ADHD, and depression at step two of the sequential evaluation process. (*See id.* at 1713). However, the ALJ accorded little weight to the remainder of Dr. Beale's opinions in this letter due to an alleged inconsistency with record evidence, including the psychological examination report provided by consultative examiner ("CE") Brian Whitlock, Ph.D. (*See id.* at 1721). Plaintiff variously argues that Dr. Beale's treatment notes supported his conclusions (*see, e.g.*, Doc. 25 at 2-3), that Dr. Beale's opinions should have been accorded more weight due to his treatment relationship with her (*see* Doc. 19 at 16), and that Dr. Beale's opinions were consistent with Dr. Whitlock's findings in some respects (*see id.*).

Because remand is required so that the ALJ may properly evaluate Dr. Beale's November 2015 opinions, the Court need not resolve Plaintiff's arguments concerning Dr. Beale's August 2017 opinions. *See Watkins*, 350 F.3d at 1299. However, the Court notes that certain findings in Dr. Beale's treatment notes—including those discussed above—could be construed as

17

corroborating the opinions expressed in his August 2017 letter. (*See, e.g.*, *id.* at 1993) (indicating assessment as "unstable," with GAF score of 50); (*id.* at 2004) (noting hospitalization for anxiety and overall disorientation). For the reasons discussed above, the ALJ's failure to address these findings in her decision was error. *See Carpenter*, 537 F.3d at 1265; *Clifton*, 79 F.3d at 1010. On remand, the ALJ will ensure that Dr. Beale's August 2017 opinions are evaluated pursuant to controlling legal standards as described herein.

### E. Other Arguments

Plaintiff also contends that the ALJ did not adequately address the combined impact of her impairments at step three of the sequential evaluation process (*see* Doc. 19 at 13) and that the ALJ erred in her step-five determination that plaintiff could perform other jobs that exist in significant numbers in the national economy (*see id.* at 16-17). Because the Court finds that remand is required on other grounds, the Court does not reach Plaintiff's additional claims of error. *See Watkins*, 350 F.3d at 1299.

### V. CONCLUSION

The ALJ erred in her review of Plaintiff's application for disability insurance benefits and supplemental security income by failing to properly weigh Dr. Beale's medical opinions pursuant to controlling legal standards. Accordingly, Plaintiff's Motion to Reverse the Administrative Law Judge (ALJ) Unfavorable Decision . . . or Alternatively to Remand the Case Back to the Administrative Law Judge (Doc. 18) is **GRANTED** as described herein, and the Court remands this case back to the SSA for proceedings consistent with this opinion.

**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**